Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Gabrielle A. Hamm, Esq.
Nevada Bar No. 11588
ghamm@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, NV  89101
Telephone: 702.385.5544
Facsimile: 702. 442.9887
*Proposed Attorneys for the Debtors*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: 22-13252-MKN |
| | ) |
| BASIC WATER COMPANY, | ) Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) Hearing Date: ***OST REQUESTED*** |
| | ) Hearing Time: ***OST REQUESTED*** |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS: (I) AUTHORIZING BASIC WATER COMPANY SPE 1, LLC
TO USE CASH COLLATERAL PURSUANT TO SECTION 363(C) OF THE
BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTY; AND (III) GRANTING RELATED RELIEF**

Basic Water Company SPE 1, LLC, a Nevada limited liability company ("**SPE**" or the

"**Debtor**"), and, together with Basic Water Company, a Nevada corporation, the debtors and

debtors-in-possession in the above-captioned proposed jointly administered Chapter[1] 11 cases, by

and through its proposed counsel of record, Schwartz Law, PLLC, hereby files this motion (the

"**Motion**") for the entry of interim and final orders (the "**Interim Order**" and "**Final Order**,"

respectively) authorizing the use of cash collateral, granting adequate protection to Bank of Nevada,

---

[1]    Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States
Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or
"**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of
Bankruptcy Procedure Rules 1001-9037. "**Local Rule**" or "**LR**" references are to the Local Rules of
Bankruptcy Practice of the United States Bankruptcy Court, District of Nevada. All other initially capitalized
terms not defined herein shall have the meanings ascribed to them in the Interim Order.

1

a division of Western Alliance Bank, as trustee (the "**Prepetition Secured Party**"), and granting related relief.

Specifically, the Motion seeks emergency approval to use Cash Collateral (as defined below) on an interim basis pursuant to the terms set forth in the proposed Interim Order attached hereto as **Exhibit 1**, granting the following relief:

(a)  authorizing SPE, pursuant to Sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, to use the Cash Collateral and other Prepetition Bond Collateral (defined below) of the Prepetition Secured Party in accordance with the terms and conditions set forth in the Interim Order;

(b)  granting superpriority claims and automatically perfected liens, security interests, and other adequate protection, as applicable, to the Prepetition Secured Party to the extent of any diminution in value of its interest in the Prepetition Bond Collateral, including Cash Collateral, under or in connection with the Prepetition Bond Documents (as defined below);

(c)  subject to certain challenge rights of certain parties in interest (and subject to the limitations specified in the Interim Order), approving certain stipulations by SPE with respect to (i) the Prepetition Bond Documents (as defined below), and (ii) the liens and security interests arising therefrom;

(d)  vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent set forth in the Interim Order;

(e)  approving SPE's waiver of its right to assert, with respect to the Prepetition Bond Collateral, the Cash Collateral, or the Adequate Protection Collateral (as defined in the Interim Order) (i) any claims to surcharge pursuant to Section 506(c) of the Bankruptcy Code, (ii) any "equities of the case" exception pursuant to Section 552(b) of the Bankruptcy Code, and (iii) the equitable doctrine of "marshalling" or any similar doctrine;

(f)  scheduling, pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Local Rule 4001-2(c), a final hearing (the "**Final Hearing**") on approval of the relief requested in the Motion on a final basis;

(g)  waiving any applicable stay with respect to the effectiveness and enforceability of the Interim Order; and

(h)  granting related relief.

This Motion is made and based on the *Declaration of Stephanne Zimmerman in Support of Debtors' Chapter 11 Petitions, First Day Motions, and Related Relief* (the "**First Day Declaration**"), the *Declaration of Stephanne Zimmerman in Support of Debtor's Emergency*

*Motion for Entry of Interim and Final Orders: (i) Authorizing Basic Water Company SPE 1, LLC to Use Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (ii) Granting Adequate Protection to the Prepetition Secured Party; and (iii) Granting Related Relief* (the "**Zimmerman Cash Collateral Declaration**"), the points and authorities set forth below, the pleadings and papers and other records contained in this Court's file, judicial notice of which is respectfully requested, and any evidence or oral argument presented at the time of the hearing on this Motion.

### BANKRUPTCY RULE 4001 STATEMENT OF RELIEF REQUESTED

The following is a summary of the provisions listed in Bankruptcy Rule 4001(b)(1)(B):[2]

| | |
|---|---|
| (i) Each entity with an interest in the cash collateral | SPE<br><br>Bank of Nevada, a division of Western Alliance Bank, as trustee (Prepetition Secured Party), and Western Alliance Business Trust (Bondowner)<br><br>The Debtors do not believe that any other creditor has a secured claim in or lien in the Prepetition Bond Collateral |
| (ii) Purpose of use of cash collateral | To fund the orderly sale of SPE's assets or other court approved reorganization transaction, pay SPE's operating expenses, and preserve the value of SPE's estate and the Prepetition Bond Collateral.<br><br>Interim Order, ¶¶ 6, 7. |
| (iii) Material Terms | The Prepetition Secured Party consents to SPE's Cash Collateral pursuant to an approved Budget and subject to terms of the Interim Order until the Termination Date (as defined in the Interim Order.<br><br>Termination Events (as defined in the Interim Order) including customary events of default along with the following milestones:<br><br>• October 31, 2022, if the Debtors have not filed a motion seeking approval of bidding procedures for the sale of Debtors' assets;<br><br>• January 3, 2023, if the Debtors have not filed a motion seeking authority to sell assets pursuant to section 363 of the Bankruptcy Code with the Court; |

---

[2]     This is a summary of the Interim Order and should not be construed to contradict the terms of the Interim Order. To the extent of any inconsistency between the Motion and the terms of the Interim Order, the terms Interim Order shall control.

| | |
|---|---|
| | • February 7, 2023, if the Court has not scheduled a hearing on the motion pursuant to section 363 of the Bankruptcy Code; |
| | • February 28, 2023, if the sale of the Debtors' assets is not closed; |
| | • September 15, 2023, if an order confirming the Debtors' chapter 11 plan (as may be amended, supplemented, or otherwise modified from time to time) has not been entered by the Court; |
| | • October 27, 2023, if the effective date of the Debtors' chapter 11 plan has not occurred; and |
| | • Either Debtor's failure to comply with any of the material terms or conditions of the Interim Order, including (i) the use of Cash Collateral for any purpose other than as permitted in this Order, (ii) failure to comply with the Budget (including any distributions in excess of the Permitted Variance that have not been resolved and approved, in writing, by the Prepetition Secured Party), or (iii) failure to comply with the reporting requirements set forth in this Interim Order. |
| | Interim Order, ¶¶ 15-16. |
| | SPE stipulates to and waives any right to the Prepetition Bond Obligations and validity, extent, and priority of Prepetition Bond Liens, which is binding on other parties in interest unless a party in interest files a motion seeking standing to assert Claims and Defenses within seventy-five (75) days following entry of the Interim Order.

Interim Order, ¶¶ 4, 26. |
| (iv) Liens, cash payments, or other adequate protection that will be provided | The Prepetition Secured Party will receive the following forms of adequate protection to the extent of any Bond Diminution in Value (as defined in the Interim Order) in the Prepetition Bond Collateral, including the Cash Collateral:

i. First priority adequate protection liens pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code on all Prepetition Bond Collateral and, with certain exceptions, all assets and properties of SPE's estate, whether now owned or hereafter acquired, and all products, proceeds, rents, and profits thereof, including the proceeds of any claims and causes of action of SPE (but not on the actual claims and causes of action) arising under Sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code; |

ii. Pursuant to Sections 361(2) and 363(c)(2) of the Bankruptcy Code, junior liens and security interests in all tangible and intangible assets of SPE's estate, including all prepetition and post-petition property of SPE's estate, and all products and proceeds thereof, whether now existing or hereafter acquired, that is subject to valid, perfected, and unavoidable liens in existence as of the Petition Date;

iii. Allowed superpriority administrative expense claims against SPE in the amount of any Bond Diminution in Value;

iv. Payment of prepetition and postpetition interest at the non-default rates and consistent with the ordinary course interest payment dates set forth in the Indenture;

v. Payment of reasonable and documented prepetition and postpetition fees and expenses payable to the Prepetition Secured Party under the Prepetition Bond Documents, including disbursements of legal counsel, financial advisors, and other consultants;

vi. Other covenants, including to maintain SPE's cash management system in a manner consistent with this Interim Order and any order of the Court approving the maintenance of SPE's cash management system; not to use, sell, or lease any material assets outside the ordinary course of business, or seek authority from this Court to do so without prior consultation with the Prepetition Secured Party; and to comply with the covenants contained in sections 7.01 and 7.04 of the Indenture;

vii. Reporting in compliance with section 9.07 of the Indenture and additional reporting regarding the Budget and variances pursuant to the Interim Order.

Interim Order, ¶¶ 11-13.

## **JURISDICTION**

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to LR 9014.2, the Debtors consent to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

2.      Venue of the Debtors' Chapter 11 cases (the "**Chapter 11 Cases**") in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Sections 105, 361, 362, 363, 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 4001, 6003, and 6004.

## BACKGROUND

### The Chapter 11 Cases

4.      On September 10, 2022 (the "**Petition Date**"), SPE and its parent company, Basic Water Company ("**BWC**" and, together with SPE, the "**Debtors**"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court. Contemporaneously with the filing of their petitions, each of the Debtors filed an application for entry of an order directing the joint administration of their Chapter 11 Cases, with BWC denominated the lead case.

5.      The Debtors continue to operate as a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      To date, the Office of the United States Trustee for Region 17 (the "**UST**") has not appointed a committee of unsecured creditors in the Chapter 11 Cases. *See generally*, Dockets of Case Nos. 22-13252 and 22-13253.

7.      A detailed description of the Debtors' financial obligations, events leading up the Petition Date, and other matters are set forth in the First Day Declaration of Stephanne Zimmerman. *See* Docket No. 7.

### The Prepetition Bond Obligations

8.      Pursuant to that certain Indenture of Trust, dated as of February 23, 2017 (the "**Indenture**"), between SPE, as Issuer, and the Prepetition Secured Party, SPE issued its $20,500,000 City of Henderson Water Delivery Contract Revenue Bonds, Taxable Series 2017 (the "**Bonds**" and, together with the Deed of Trust, Water Delivery Contract, Assignment Agreement, and Irrevocable Assignment, and all other Issuer Documents (as defined in the Indenture) and all other documentation executed by SPE in connection with any of the foregoing, each as amended, restated, and supplemented, or otherwise modified from time to time, the "**Prepetition Bond**

**Documents**"). Western Alliance Business Trust, an affiliate of the Indenture Trustee, is the sole owner of the Bonds. *See* Zimmerman Cash Collateral Decl., ¶ 11.

9.      As of the Petition Date, pursuant to the Prepetition Bond Documents and applicable law, the Prepetition Secured Party holds valid, enforceable, secured, and allowable claims against SPE in an aggregate principal amount equal to $7,457,299.54, plus any and all other accrued and unpaid interest, fees, expenses, disbursements, charges, claims, indemnities and other costs and obligations chargeable or otherwise reimbursable under the Prepetition Bond Documents or applicable law, (collectively, the "**Prepetition Bond Obligations**"). *See id.*, ¶ 12.

10.      The Prepetition Bond Obligations are payable from and secured by perfected, first priority liens on and security interests (the "**Prepetition Bond Liens**") in the "Trust Estate," as defined in the Indenture (the "**Prepetition Bond Collateral**"), which includes, among other things: (i) the City Water Delivery Contract, (ii) the revenues from the City Water Delivery Contract, (iii) the assets secured by the Deed of Trust, Pledge and Security Agreement and Fixture Filing with Assignment of Rents, recorded on February 24, 2017, as Instrument No. 201702240002702 (the "**Deed of Trust**"), including the Water Facilities; and (iv) all accounts or subaccounts created under the Indenture and held by the Indenture Trustee (collectively, the "**Indenture Accounts**"), including all cash maintained therein (the "**Cash Collateral**"). *See id.*, ¶ 13.

11.      The following accounts are the Indenture Accounts:[3]

| Account Type | Last 4 Digits | Name | Approx. petition date balance |
|---|---|---|---|
| Money Market | 1685 | Improvement Fund[4] | $0 |
| Money Market | 4955 | Bond Fund | $657,402 |
| Money Market | 6124 | Revenue Fund | $1,006,440 |
| Checking | 9469 | Expense Fund | $0 |

---

[3]      In addition, SPE holds a checking account with Bank of Nevada that is not an Indenture Account. That account held approximately $1,179,491 on the Petition Date.

[4]      The Improvement Fund was created pursuant to section 3.02 of the Indenture to pay for the cost of authorized improvements to the Facilities (as defined in the Indenture). Prepetition, on September 9, 2022, SPE effectuated a partial redemption of the Bonds pursuant to section 5.01(a) of the Indenture by directing the Indenture Trustee to apply the funds in the Improvement Fund to the balance of the Bonds as consideration for SPE's use of Cash Collateral. As a result, the balance of the Improvement Fund as of the Petition Date is $0. *See* Zimmerman Cash Collateral Decl., ¶ 24.

1   *See* First Day Decl., ¶ 76.

2        12.     The Indenture provides that payments on the Bonds are due semi-annually on June

3 1 and December 1 of each year, commencing June 1, 2017, with the next payment due on December

4 1, 2022. The Indenture further requires that the revenues from the City Water Delivery Contract be

5 paid into the Revenue Fund, and funds in the Revenue Fund be applied monthly, first to the Bond

6 Fund in an amount sufficient to pay the principal and interest due on the Bonds on the next payment

7 date, then to the Expense Fund to pay the fees and expenses of the Indenture Trustee, and then, to

8 the extent of any any remaining amounts, to BWC, which operates and maintains the water system

9 pursuant to the 2004 Assignment Agreement between BWC and SPE. *See* Zimmerman Cash

10 Collateral Decl., ¶ 17.

11        13.     Upon information and belief, no other creditor has a secured claim in or lien in the

12 Prepetition Bond Collateral. *See id.*, ¶ 14.

13        14.     SPE cannot meet its ongoing postpetition obligations unless it has the immediate

14 ability to use the Prepetition Bond Collateral, including the Cash Collateral. SPE intends to use the

15 Cash Collateral to, among other things, fund the orderly sale of its assets or other court approved

16 reorganization transaction, pay SPE's operating expenses, and preserve the value of SPE's estate

17 and the Prepetition Bond Collateral, all pursuant to the monthly budget attached to the Interim

18 Order as **Exhibit 1** (as may be amended or replaced pursuant to paragraph 17 of the Interim Order,

19 the "**Budget**"). In the absence of such use, immediate and irreparable harm will result to the Debtors'

20 estates and their creditors, and an effective and orderly sale of the Debtors' business or assets will

21 be impossible. *See id.*, ¶ 23.

22                             **<u>BASIS FOR RELIEF</u>**

23        15.     Section 363 of the Bankruptcy Code provides that a debtor in possession may not

24 use cash collateral unless each entity with an interest in such cash collateral consents, or the court,

25 after notice and a hearing, authorizes the use. 11 U.S.C. § 363(c)(2); *see Sears Savings Bank v.*

26 *Tucson Industrial Partners*, 129 B.R. 614 (B.A.P. 9th Cir. 1991). Pursuant to section 363(a), cash

27 collateral includes cash, cash equivalents, deposit accounts, rents, and proceeds "in which the estate

28 and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Whether an entity has a

security interest in a particular type of property is generally determined by state law. *Butner v. United States*, 440 U.S. 48, 57 (1979); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000).

16.     If, pursuant to Section 363(c)(2)(A), an entity with an interest in cash collateral consents to that collateral's use, sale or lease, a debtor-in-possession may still be required to provide adequate protection to an entity with an interest in the cash collateral. Section 363(e) provides, in pertinent part, as follows:

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. ...

11 U.S.C. § 363(e). The debtor in possession has the burden of proof on the issue of adequate protection, and the entity claiming an interest in the alleged cash collateral has the burden of proof on the issue of the validity, priority, and extent of its interest in the property. 11 U.S.C. § 363(p).

17.     Section 363(c)(3) of the Bankruptcy Code permits a preliminary hearing an order for use of Cash Collateral until a final hearing on the matter can be held. 11 U.S.C. § 363(c)(3). In addition, this section states that "[t]he court shall act promptly on any request for authorization ... "*Id*. The Ninth Circuit Court of Appeals has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is a perilous process, seldom more so that at the outset of the proceeding when the debtor is often without sufficient cash flow to fund a central business operation. *In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bankr. D. ME 1986). It is for this reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor." 11 U.S.C. § 363(c)(3).

*In re Center Wholesale, Inc*., 795 F.2d 1440, 1449 n 21 (9th Cir. 1985).

18.     The Prepetition Secured Party is the only party with a properly perfected security interest in the Cash Collateral and Prepetition Bond Collateral. The Prepetition Secured Party has consented to SPE's use of the Cash Collateral and Prepetition Bond Collateral, subject to the terms

and conditions set forth in the Interim Order, including the provision of adequate protection in the form of, among other things, administrative claims and liens.

19. SPE respectfully submits that the immediate use of the Cash Collateral is necessary to preserve the Debtors' assets during the Chapter 11 Cases and will avoid immediate and irreparable harm to the estates of both Debtors and their creditors. SPE requires the use of Cash Collateral to pay the operating expenses of the Water Facilities allocable to SPE, maintain the Water Facilities, and continue the operations of the Debtors' business. Such use affirmatively and directly benefits both Debtors' estates and their creditors by preserving the value of the Water Facilities and enhancing the prospects of a sale.

20. Furthermore, immediate use of Cash Collateral pursuant to the Budget is essential to the ongoing operation of the Water Facilities and preservation of the value of the Debtors' assets for the benefit of their estate and creditors. If SPE is not permitted to immediately use Cash Collateral to the extent set forth in the Budget, the Debtors may be forced to terminate operations, which would risk damage to the Water Facilities, destroy the going concern value of the Debtors' business, and result in tremendous damage to the Industries and, by extension, the community at large.

## **CONCLUSION**

WHEREFORE, SPE respectfully requests that the Court enter the proposed Interim Order, thereby authorizing and approving SPE's use of Cash Collateral on an interim basis, setting a final hearing at least twenty-one (21) days after the Petition Date to approve the use of Cash Collateral on a final basis, and grant such other and further relief as is just and proper under the circumstances.

Dated: September 12, 2022.

SCHWARTZ LAW, PLLC

By: */s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV  89101
*Proposed Attorneys for the Debtors*

# EXHIBIT 1

# EXHIBIT 1

1

2

3

4

5

6

7   Samuel A. Schwartz, Esq.
    Nevada Bar No. 10985
8   saschwartz@nvfirm.com
    Gabrielle A. Hamm, Esq.
9   Nevada Bar No. 11588
    ghamm@nvfirm.com
10  SCHWARTZ LAW, PLLC
    601 East Bridger Avenue
11  Las Vegas, NV  89101
    Telephone: 702.385.5544
12  Facsimile: 702. 442.9887
13  *Proposed Attorneys for the Debtors*

14

15                    **UNITED STATES BANKRUPTCY COURT**
                       **FOR THE DISTRICT OF NEVADA**
16

17  In re:                              )  Case No.: 22-13252-MKN
                                        )
18  BASIC WATER COMPANY,                )  Chapter 11
                                        )
19                                      )
                                        )
20            Debtor.                   )  Hearing Date: *OST REQUESTED*
                                        )  Hearing Time: *OST REQUESTED*
21

22        **[INTERIM] ORDER (I) AUTHORIZING BASIC WATER COMPANY SPE 1,**
       **LLC TO USE CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE**
23      **BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION TO THE**
        **PREPETITION SECURED PARTY; AND (III) GRANTING RELATED RELIEF**

24        Upon the motion (the "**Motion**")[1] of Basic Water Company SPE 1, LLC, a Nevada limited

25  liability company ("**SPE**" or the "**Debtor**"), and, together with Basic Water Company, a Nevada

26  corporation, the debtors and debtors-in-possession in the above-captioned proposed jointly

27  _____

28  [1]      Capitalized terms used but not defined herein have the meaning ascribed to such terms in the
    Motion.

                                          1

administered Chapter 11 cases, for entry of interim and final orders (this "**Interim Order**" and the "**Final Order**" respectively) pursuant to sections 105(a), 361, 362, 363, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001 and 9014.2 of the Bankruptcy Local Rules for the District of Nevada (the "**Bankruptcy Local Rules**"), seeking, among other things, the following relief:

a.   authorization for SPE, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, to use the Cash Collateral and other Prepetition Bond Collateral of the Prepetition Secured Party (each as defined below) in accordance with the terms and conditions set forth below;

b.   the grant of superpriority claims and the grant of automatically perfected liens, security interests, and other adequate protection, as applicable, to the Prepetition Secured Party to the extent of any diminution in value of its interest in the Prepetition Bond Collateral, including Cash Collateral, under or in connection with the Prepetition Bond Documents (as defined below);

c.   subject to certain challenge rights of certain parties in interest (subject to the limitations specified herein), approving certain stipulations by SPE with respect to (i) the Prepetition Bond Documents (as hereinafter defined below), and (ii) the liens and security interests arising therefrom;

d.   vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

e.   waiving SPE's right to assert, with respect to the Prepetition Bond Collateral, the Cash Collateral, or the Adequate Protection Collateral (as defined below) (i) any claims to surcharge pursuant to section 506(c) of the Bankruptcy Code, (ii) any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code, and (iii) the equitable doctrine of "marshalling" or any similar doctrine;

f.   scheduling, pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Local Rule 4001-2(c), a final hearing (the "**Final Hearing**") on approval of the relief requested in the Motion on a final basis;

g.   waiving any applicable stay with respect to the effectiveness and enforceability of this Order; and

h.   granting related relief;

and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

2

1.     *The Motion*.  The relief requested in the Motion is granted on a [interim/final] basis in accordance with the terms of, and to the extent set forth in, this [Interim/Final] Order.  Any and all objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein.  This Order shall become effective immediately upon its entry.

2.     *Jurisdiction*.  This Court has core jurisdiction over the Debtors' chapter 11 cases commenced on September 10, 2022 (the "**Chapter 11 Cases**," and such date, the "**Petition Date**"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     *Notice*.  Under the circumstances of these cases, proper, timely, adequate and sufficient notice of the Motion, the Hearing, and this Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice of the Motion, the Hearing, or this Final Order shall be required.

4.     *SPE's Stipulations*.  In requesting use of Cash Collateral and the other Prepetition Bond Collateral, and in exchange for and as a material inducement to the Prepetition Secured Party's agreement to permit consensual use of its Cash Collateral and the other Prepetition Bond Collateral, SPE acknowledges, represents, stipulates, and agrees, as follows (the "**SPE Stipulations**"):

    a.     *Indenture*.  Pursuant to that certain Indenture of Trust, dated as of February 23, 2017 (the "**Indenture**"), between SPE, as issuer and the Bank of Nevada, as trustee (the "**Indenture Trustee**" or the "**Prepetition Secured Party**"), the SPE issued its $20,500,000 City of Henderson Water Delivery Contract Revenue Bonds, Taxable Series 2017 (the "**Bonds**") and together with the Deed of Trust, Water Delivery Contract, Assignment Agreement, and Irrevocable Assignment, and all other Issuer Documents (as defined in the Indenture) and all other documentation executed by any Debtor in connection with any of the foregoing, each as amended, restated, and supplemented, or otherwise modified from time to time, the "**Prepetition Bond Documents**").  Western Alliance Business Trust, an affiliate of Bank of Nevada, the Indenture Trustee, represents that it owns all of the Bonds.

    b.     *Prepetition Bond Obligations*. As of the Petition Date, pursuant to the Prepetition Bond Documents and applicable law, the Prepetition Secured Party holds valid, enforceable, secured, and allowable claims against SPE

3

in an aggregate amount equal to $[14,785,150], plus any and all other accrued and unpaid interest, fees, expenses (including advisors fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Bond Documents), disbursements, charges, claims, indemnities and other costs and obligations of whatever nature incurred in connection therewith which are chargeable or otherwise reimbursable under the Prepetition Bond Documents or applicable law, whether arising before or after the Petition Date, including any "Obligations" (as defined in the Indenture), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the SPE's obligations under the Prepetition Bond Documents (collectively, the "**Prepetition Bond Obligations**").

c.     *Prepetition Bond Liens*.  The Prepetition Bond Obligations are secured by continuing, legal, valid, binding, properly perfected, enforceable, non-avoidable first priority liens on and security interests in (the "Prepetition **Bond Liens**") the "Trust Estate" as defined in the Indenture (the "**Prepetition Bond Collateral**"), including, but not limited to (each of the following as defined in the Indenture):  (a) SPE's interest in the Facilities; (b) that certain Water Delivery Contract; (c) the Revenues; (d) all accounts or subaccounts created under the Indenture and held by the Indenture Trustee, including all cash maintained therein that constitutes Cash Collateral (collectively, the "**Indenture Accounts**").

d.     *Validity, Perfection, and Priority of Prepetition Bond Liens and Prepetition Bond Obligations*.  SPE stipulates and agrees that, as of the Petition Date: (i) the Prepetition Bond Liens on the Prepetition Bond Collateral were valid, binding, and enforceable in accordance with the terms of the applicable Prepetition Bond Documents, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Party for fair consideration and reasonably equivalent value; (ii) the Prepetition Bond Liens were and remain senior in priority over any and all other liens on and security interests in the Prepetition Bond Collateral, subject only to (x) the Carve Out (as defined below) and (y) valid, perfected and unavoidable liens permitted under Section 3.01 of the Indenture to the extent that such liens or security interests are senior to or *pari passu* with the Prepetition Bond Liens (including, for the avoidance of doubt, valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code) (a "**Permitted Encumbrance**"); (iii) the Prepetition Bond Obligations constitute legal, valid, binding and non-avoidable obligations of SPE, enforceable in accordance with the terms of the applicable Prepetition Bond Documents; (iv) no portion of the Prepetition Bond Obligations, the validity of the perfection of the Prepetition Bond Liens, or any payments made to the Prepetition Secured Party or applied to or paid on account of the obligations owing under the Prepetition Bond Documents prior to the Petition Date is subject to any contest, avoidance, reduction, recharacterization,

subordination (whether equitable, contractual or otherwise), recovery, reduction, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any kind or nature under the Bankruptcy Code or any other applicable law or regulation or otherwise and neither SPE nor BWC possess, and shall not assert, any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect or challenge the validity, enforceability and non-avoidability of any Prepetition Bond Obligations or the Prepetition Bond Liens; and (v) SPE waives, discharges, and releases any right to challenge any of the Prepetition Obligations, the priority of SPE's obligations thereunder and the validity, extent, and priority of the Prepetition Bond Liens.

e. *Bondowner*.  Western Alliance Business Trust, an affiliate of Bank of Nevada, the Indenture Trustee, has represented to SPE that, as of the Petition Date, it is the Registered Owner of 100% of the Bonds outstanding (the "**Bondowner**").  Pursuant to section 11.03 of the Indenture, the Bondowner can direct the time, method, and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of the Indenture.  The Indenture Trustee has represented to SPE that the Bondowner and the Trustee are both being represented by Squire Patton Boggs (US) LLP and Kaempfer Crowell and, to the extent necessary or applicable, SPE waives any objection to such joint representation and affirmatively consents thereto.  Further, SPE waives any right, under the Indenture, including Article XII of the Indenture or under applicable law, to seek to replace the Indenture Trustee as a result of the affiliation and any perceived conflict arising between the Indenture Trustee and the Bondowner.  SPE affirms that, to the extent necessary, its consent shall not be required for the designation of any replacement indenture trustee under Article XII of the Indenture.

f. *Other Prepetition Secured Creditors*.  SPE stipulates that as of the Petition Date, except for the Indenture Trustee and the Prepetition Bond Obligations, there are no other creditors and no other obligations that are secured by liens on or security interests in any SPE assets.

g. *Prepetition Defaults*.  The Prepetition Secured Party acknowledges, stipulates and agrees that as of the Petition Date, SPE was not in default under the Prepetition Bond Documents.

5.     *Cash Collateral*.  For purposes of this Order, the term "**Cash Collateral**" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, including cash collateral in or on which the Prepetition Secured Party has a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), and shall include, without limitation, all cash equivalents, whether in the form of negotiable instruments,

5

documents of title, securities, deposit accounts, commodity accounts, securities accounts, investment accounts, or in any other form, that were on the Petition Date in the Indenture Trustee's or SPE's possession, custody or control, including to the extent SPE obtains an interest in such funds after the Petition Date in the case of each of the foregoing. The Indenture Trustee has, for the benefit of the Bondowner, first-priority, perfected liens in the Cash Collateral pursuant to the applicable provisions of the Prepetition Bond Documents, sections 363(a) and 552(b) of the Bankruptcy Code, and this Order.

6.      *Findings Regarding the Use of Cash Collateral and Prepetition Bond Collateral.*

      a.      Good cause has been shown for the entry of this Order.

      b.      SPE has an immediate need to use the Prepetition Bond Collateral, including Cash Collateral to, among other things, fund the orderly sale of its assets or other court approved reorganization transaction, pay the SPE's operating expenses, and preserve the value of SPE's estate and the Prepetition Bond Collateral.

      c.      The terms of the use of the Prepetition Bond Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

      d.      The terms of the use of the Prepetition Bond Collateral pursuant to this Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the Prepetition Bond Party and, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Indenture Trustee and the Prepetition Bond Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

7.      *Need for Limited Use of Cash Collateral.* SPE has an immediate and critical need to use the Prepetition Bond Collateral (including Cash Collateral) in order to permit, among other things, maintenance of the Facilities (as defined in the Indenture), the marketing and sale of its assets, make payroll, and to satisfy other operational needs and fund its Chapter 11 Case, in each such case in accordance with the terms of this Order, including in accordance with the Budget (as defined below). The access of the Debtors to sufficient working capital and liquidity, including through the use of the Cash Collateral is necessary to preserve and maintain the value of the

Debtors' estates.  Absent authorization to immediately access and use Cash Collateral, the Debtors, the estates, and their creditors would suffer immediate and irreparable harm. The Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Bond Adequate Protection Payments, and the Bond Adequate Protection Fees and Expenses (each as defined herein) are consistent with and authorized by the Bankruptcy Code.

8.      *Consent by the Prepetition Secured Party*.  The Prepetition Secured Party, solely to the extent of the consent and direction of the Bondowner, consents to the Debtors' use of its Cash Collateral, including, but not limited to, withdrawal and use of funds in the Indenture Accounts, in accordance with and subject to the terms and conditions contained in this Order.  All use of such Cash Collateral by SPE shall be consistent with the monthly budget attached hereto as **Exhibit A** (as may be amended or replaced pursuant to paragraph 17 hereof, the "**Budget**") to the extent approved by the Bondowner pursuant to direction to the Indenture Trustee; provided, however, that the actual aggregate cash balance, which shall be tested on a monthly basis, shall not be less than the projected amount therefore set forth in the Budget for such applicable time period by more than 15%; provided that Allowed Professional Fees, the Adequate Protection Fees and Expenses (as defined in paragraph 12 below), and payments to the U.S. Trustee shall not be subject to such test; provided further, that Allowed Professional Fees shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than 15% (any variance not exceeding the maximum amounts set forth above, a "**Permitted Variance**") (provided that nothing herein shall operate as a limitation on the amount of professional fees a Professional Person (defined below) may seek to be paid by the Debtors pursuant to an order of the Court, nor shall anything herein limit the Prepetition Secured Party's rights to oppose any request for payment of professional fees in excess of the Permitted Variance, nor shall any professional fee application give rise to a default under this Stipulation).

9.      *Use of Cash Collateral*.  SPE is authorized to use the Cash Collateral constituting Prepetition Bond Collateral, including, but not limited to, the funds in the Indenture Accounts, in accordance with this Order and for SPE's approved expenses set forth in the Budget, pursuant to a

Request for Draw in substantially the form attached hereto as **Exhibit B** that shall contain customary terms and conditions, including sources and uses, as well as a certification that such use is in compliance with the Budget.

10. *Entitlement of Prepetition Secured Party to Adequate Protection*. Pursuant to sections 361, 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Secured Party is entitled to adequate protection of its interests in the Prepetition Bond Collateral, including the Cash Collateral, in an amount equal to the aggregate actual diminution in the value of the Prepetition Secured Party's interest in the Prepetition Bond Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the sale, lease, or use by the Debtors of the Prepetition Bond Collateral (including Cash Collateral, whether pursuant to the Budget or otherwise), the subordination of their liens on the Prepetition Bond Collateral and Adequate Protection Superpriority Claims (as defined herein) to the Carve Out pursuant to this Order, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code ("**Bond Diminution in Value**").

11. *Bond Adequate Protection Claims and Liens*. The Prepetition Secured Party is hereby granted the following (collectively, the "**Bond Adequate Protection Obligations**"), solely to the extent of any Bond Diminution in Value; provided that the collateral set forth in this paragraph 11 shall not include assets or property (other than Prepetition Bond Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Order, would constitute a default or event of default under any of the Debtors' contracts or leases, but shall include the proceeds thereof:

      a.    *Bond Adequate Protection Liens*. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection against any actual Bond Diminution in Value (if any) of the Prepetition Bond Collateral, including Cash Collateral, effective as of the Petition Date, the Prepetition Secured Party is hereby, as security for the payment of the Bond Adequate Protection Obligations, subject and subordinate only to the Carve Out, the following security interests and liens (all such liens and security interests, the "**Bond Adequate Protection Liens,**" and all property identified in clauses (i) - (ii)

8

below being collectively referred to as the "**Adequate Protection Collateral**"):

(i) <u>First Priority Bond Adequate Protection Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, binding, continuing, enforceable, fully perfected, first priority (subject to subparagraph 11(b)) senior replacement liens on and security interests in and upon (a) all Prepetition Bond Collateral, and (b) all assets and properties of SPE's estate other than those assets and properties that are subject to any other (x) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, whether now owned or hereafter acquired, including, without limitation, all personal and real property of the SPE estate and all products, proceeds, rents, and profits thereof that, from and after the Petition Date, is not subject to any lien or security interest, if any, including the proceeds of any claims and causes of action of SPE (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "**Avoidance Actions**") (the foregoing liens being collectively referred to as the "**First Priority Bond Adequate Protection Liens**").

(ii) <u>Junior Bond Adequate Protection Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority liens on, and junior security interests in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of SPE's estate, and all products and proceeds thereof, whether now existing or hereafter acquired, that is subject to (a) valid, perfected, and unavoidable liens in existence as of the Petition Date, or (b) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Prepetition Secured Party (the foregoing liens being collectively referred to as the "**Junior Bond Adequate Protection Liens**").

b. *Status of the Bond Adequate Protection Liens*. Subject in all respects to the Carve Out, the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of SPE and its estate under section 551 of the Bankruptcy Code or (B) any lien or security interest arising against SPE after the Petition Date, or (ii) except as otherwise set forth in clauses (a)(i)-(ii) of this

paragraph 11, subordinated to or made *pari passu* with any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

c. *Adequate Protection Superpriority Claims*. The Bond Adequate Protection Obligations due to the Prepetition Secured Party shall constitute allowed superpriority administrative expense claims against SPE in the amount of any Bond Diminution in Value, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against SPE, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision of the Bankruptcy Code, and shall at all times be senior to the rights of SPE and any successor trustee or creditor in these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of SPE's Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (each, a "**Successor Case**") (the "**Bond Adequate Protection Superpriority Claims**"), subject and subordinate only to the Carve Out (as defined herein).

12. *Bond Additional Adequate Protection*. As additional adequate protection to the Prepetition Secured Party:

a. *Payment of Prepetition and Postpetition Interest*. SPE shall pay to the Prepetition Secured Party all accrued and unpaid interest (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) at the non-default rates and consistent with the ordinary course interest payment dates set forth in the Indenture (the "**Bond Adequate Protection Interest Payments**").

b. *Payment of Prepetition Trustee Fees and Expenses*. As additional adequate protection, the Prepetition Secured Party shall receive from SPE current cash payments of all reasonable and documented prepetition and postpetition fees and expenses payable to the Prepetition Secured Party under the Prepetition Bond Documents, including, but not limited to, the reasonable and documented prepetition and postpetition fees and disbursements of legal counsel, financial advisors, and other consultants (the "**Bond Adequate Protection Fees and Expenses**"). Payment of all such professional fees and expenses shall not be subject to allowance by the Court but shall be subject to the following process: At the same time such invoices are delivered to the Debtors, the professionals for the Prepetition Secured Party shall deliver a copy of their respective invoices to counsel for any official committee appointed in these cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**") and the office of the United States Trustee (the "**U.S. Trustee**"); the invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines

related to the payment of fees and expenses of retained estate professionals, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee, or any Creditors' Committee with respect to such invoices within ten (10) days of receipt thereof (the "**Invoice Review Period**") will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be paid by the Debtors within five (5) days of the expiration of the Invoice Review Period. Except as otherwise ordered by the Court in the event an objection is timely filed, such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

c.    *Other Covenants*. SPE shall maintain its cash management system in a manner consistent with this Order, and any order of this Court approving the maintenance of SPE's cash management system. SPE shall not use, sell, or lease any material assets outside the ordinary course of business, or seek authority from this Court to do any of the foregoing, without prior consultation with the Prepetition Secured Party at least seven (7) days prior to the date on which the Debtors seek authority of this Court for such use, sale, or lease. The Debtors shall comply with the covenants contained in sections 7.01 and 7.04 of the Indenture regarding the maintenance and insurance of the Prepetition Bond Collateral and the Adequate Protection Collateral.

13.    *Reporting*. As adequate protection for the Debtors' use of the Prepetition Bond Collateral (including Cash Collateral), SPE shall comply with the reporting requirements set forth in section 9.07 of the Indenture. Debtors shall also provide the following additional reporting to the Prepetition Secured Party and the Creditors' Committee (as applicable):

a.    on or before 5:00 p.m. (Pacific Time) on the 10th day of each month (or, if such day is not a business day, then the immediately succeeding business day), until earlier of (i) confirmation of a chapter 11 plan by the Debtors or (ii) the repayment of the Prepetition Bond Obligations indefeasibly in full in cash, a variance report that reflects a comparison of actual disbursements and receipts for the prior month period to the projected disbursements and receipts in the Budget for such period and a calculation of any variance from the Budget, including written descriptions in reasonable detail explaining any material positive or negative variances (a "**Variance Report**"). The Debtors may propose a revised Budget at any time. Each proposed Budget provided to the Prepetition Secured Party shall be of no force and effect unless and until it is approved by the Prepetition Secured Party, and, until such approval is given, the prior Budget shall remain in effect. Any such proposed Budget, upon the approval of the Prepetition Secured Party shall become, as of the date of such approval or such determination (and the Prepetition Secured Party shall be deemed to have approved the Budget upon the passage of five (5) days with no objection) and for the period of

time covered thereby, the Budget, and shall prospectively replace any prior Budget. If the Debtors and the Prepetition Secured Party are unable to agree on a proposed Budget's terms, the Debtors reserve the right to seek an expedited hearing with the Court to resolve such disagreement. In that event, the Prepetition Secured Party shall not oppose the request for expedited consideration provided that any such hearing is held on not less than 48 hours' notice to the Prepetition Secured Party. In the event of any dispute regarding the terms of a Budget, the Debtors and the Prepetition Secured Party reserve any and all rights under the Bankruptcy Code or applicable law.

14.    *Carve Out.*

a.    *Carve Out.* As used in this Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery of a Notice of Termination (defined below) by Prepetition Secured Party, whether allowed by the Court prior to or after delivery of such notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $150,000 incurred after the first business day following delivery by the Prepetition Secured Party of a Notice of Termination, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Termination Cap**"). For purposes of the foregoing, "**Notice of Termination**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Secured Party to the Debtors, the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined below) and upon termination of SPE's right to use Cash Collateral by the Prepetition Secured Party.

(i)    On the day on which a Notice of Termination Notice is given by the Secured Party to the Debtors with a copy to counsel to any Creditors' Committee (the "**Termination Date**"), the Notice of Termination shall constitute a demand to the Debtors to and the Debtors shall utilize all cash on hand as of such date, in accordance with the requirements set forth in paragraph 9.

12

b.    *Payment of Allowed Professional Fees Prior to the Termination Date.* Any payment or reimbursement made prior to the occurrence of the Termination Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

c.    *Payment of Carve Out On or After the Termination Date.* Any payment or reimbursement made on or after the occurrence of the Termination Date in respect of any Allowed Professional Fees shall permanently reduce the allocated subcategory of the Carve Out on a dollar-for dollar basis.

15.    *Termination.* SPE's right to use Cash Collateral shall terminate on the Termination Date, without prior order of this Court or any further action by the Prepetition Secured Party upon three (3) business days following the delivery of a written notice (a "**Default Notice**") by the Prepetition Secured Party to Schwartz Law, PLLC (any such three (3) business-day period of time, the "**Default Notice Period**") of the occurrence of any of the events set forth in clauses (a) through (r) below (unless cured by SPE or waived by the Prepetition Secured Party, with the consent of the Bondowner, in writing (with email being sufficient) prior to expiration of the Default Notice Period); provided that, if a hearing to consider any appropriate relief in connection with delivery of the Default Notice or continued use of Cash Collateral (as may be held on an expedited basis) is requested to be heard within such three (3) business day period but is scheduled for a later date by the Court, the Default Notice Period shall be automatically extended to the date of such hearing (the events set forth in clauses (a) through (k) below are collectively referred to herein as the "**Termination Events**"):

a.    November 18, 2022, if the Debtors have not filed a motion seeking approval of bidding procedures for the sale of Debtors' assets;

b.    March 31, 2023, if the Debtors have not filed a motion seeking authority to sell assets pursuant to section 363 of the Bankruptcy Code with the Court;

c.    April 28, 2023, if the Court has not scheduled a hearing on the motion pursuant to section 363 of the Bankruptcy Code;

d.    June 2, 2023 if the sale of the Debtors' assets is not closed;

e.    If the Debtors liquidate or sell the Facilities without consent of the Prepetition Secured Party;

13

f.    If the Debtors fail to apply the proceeds of any sale of the Debtors' assets to satisfy the pre-and post-petition claims of the Prepetition Secured Party pursuant to a final order authorizing the sale of the assets;

g.    September 15, 2023, if an order confirming the Debtors' chapter 11 plan (as may be amended, supplemented, or otherwise modified from time to time) has not been entered by the Court;

h.    October 27, 2023, if the effective date of the Debtors' chapter 11 plan has not occurred;

i.    any Debtor's failure to comply with any of the material terms or conditions of this Order, including, but not limited to, (i) the use of Cash Collateral for any purpose other than as permitted in this Order, (ii) failure to comply with the Budget (including any distributions in excess of the Permitted Variance that have not been resolved and approved, in writing, by the Prepetition Secured Party), or (iii) failure to comply with the reporting requirements set forth in this Order;

j.    the failure of SPE to make any payment under this Order to the Prepetition Secured Party within three (3) business days after such payment becomes due, other than payments required pursuant to paragraph 12(b) of this Order, which payments shall be made as required therein;

k.    this Order ceases, for any reason (other than by reason of the express written agreement by the Prepetition Secured Party, to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by this Order cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing;

l.    the Court shall have entered an order reversing, amending, supplementing, staying, vacating, or otherwise modifying this Order in a manner materially adverse to the Prepetition Secured Party without the prior written consent of the of the Prepetition Secured Party, which consent may be provided by electronic mail;

m.    the date an application, motion, or other pleading is filed by either of the Debtors for the approval of, or the date the Court shall have entered an order recognizing or granting, any superpriority claim or any lien in these Chapter 11 Cases that is *pari passu* with or senior to the Bond Adequate Protection Superpriority Claims or the Bond Adequate Protection Liens without the prior written consent of the Prepetition Secured Party (other than the Carve Out);

n.    the date any of the Debtors files any pleading or commences any action against the Prepetition Secured Party challenging the validity or enforceability of the Prepetition Bond Obligations or the Prepetition Bond

Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Party arising under or related to the Prepetition Bond Obligations (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party); provided that if the Debtors provide any response to any discovery request, or make a witness available for deposition, such action shall not be a violation of this subparagraph 15(n);

o.    the date any of the Debtors file or otherwise support any motion, pleading, or other document, including a chapter 11 plan, that (i) seeks to amend, modify, or supplement this Order, or (ii) otherwise materially and negatively affects the rights of the Prepetition Secured Party under the Prepetition Bond Documents or as provided in this Order, without the prior written consent of the Prepetition Secured Party; provided, that the consent of the Prepetition Secured Party shall not be required if, pursuant to a chapter 11 plan, the Prepetition Bond Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash on the effective date of such plan.

p.    the date any of the Debtors file a motion seeking an order, or the date any court of competent jurisdiction enters an order, dismissing the Chapter 11 Cases, converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, appointing a trustee, responsible officer, or examiner with expanded powers relating to the operation of the organization in the Chapter 11 Cases, or terminating the Debtors' exclusivity under Bankruptcy Code section 1121, unless consented to in writing by the Prepetition Secured Party;

q.    the filing of any pleading by any Debtor in support of (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion filed in the Court by the Prepetition Secured Party or the Bondowner seeking confirmation of the amount of its claims or the validity or enforceability of the Prepetition Bond Liens or the Adequate Protection Liens, except with regard to good faith disputes over the payment of expenses and fees, provided that if the Debtors provided any response to any discovery request, or make a witness available for deposition, such action shall not be a violation of this subparagraph 15(q); or

r.    the Court shall have entered an order granting relief from the automatic stay (without the consent of the Prepetition Secured Party) to the holder or holders of any security interest to permit foreclosure (or the granting of a deed *in lieu* of foreclosure or the like) on any of the Prepetition Bond Collateral or Adequate Protection Collateral on which the Prepetition Secured Party has a first-priority security interest, which has an aggregate value in excess of $50,000; provided however, that to the extent such lien can be satisfied by amounts contemplated to pay prepetition liens in the Budget, any relief granted on account of such liens shall not trigger a Termination Event.

15

16.     *Rights and Remedies upon Termination Event*.  Except as otherwise ordered by the Court, upon the Termination Date, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Order, any Adequate Protection Obligations determined by the Court to be due and owing as of the delivery of the Default Notice, if any, shall become due and payable and/or the Prepetition Secured Party shall be entitled to exercise their rights and remedies.  Prior to exercising the remedies set forth in this sentence below, the Prepetition Secured Party shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on no less than five (5) business days' written notice, which notice period may be concurrent with the Default Notice Period, to (i) the Court, (ii) counsel for the Debtors, (iii) counsel for the Creditors' Committee (if any), and (iv) the U.S. Trustee, for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the Prepetition Secured Party to exercise their rights and remedies against the Prepetition Bond Collateral or Adequate Protection Collateral to the extent available in accordance with the applicable Prepetition Bond Documents, this Order, or applicable law, including (x) setting-off amounts in any account of SPE maintained with the Prepetition Secured Party with respect to which the Prepetition Secured Party controls pursuant to a deposit account control agreement to the extent necessary for payment of the Adequate Protection Obligations determined by the Court to be due and payable as of the delivery of the Default Notice and (y) foreclosing upon and selling all or a portion of the Prepetition Bond Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  Upon the Court's ruling on the Stay Relief Motion, the Court may fashion an appropriate remedy upon a determination that a Termination Event occurred, including that the Prepetition Secured Party shall be entitled to exercise all rights and remedies with respect to the Collateral provided for in this Order, including the right to foreclose on or otherwise exercise its rights with respect to all or any portion of the Collateral, as permitted by the Court. Upon the occurrence of the delivery of a Default Notice, the Debtors, and the Prepetition Secured Party consent to a hearing on an expedited basis to consider whether (a) a Termination Event has occurred and (b) any other appropriate relief

(including, without limitation, the Debtors' non-consensual use of Cash Collateral). During the Default Notice Period, SPE shall be entitled to continue to use the Cash Collateral in accordance with the terms of the Budget and this Final Order. Notwithstanding anything to the contrary herein, upon a Termination Event, the delivery of a Default Notice, the expiration of the Default Notice Period, or the occurrence of the Termination Effective Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Party under this Order shall survive. Except as otherwise provided herein or ordered by the Court, neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any rights, benefits, privileges and remedies of the Prepetition Secured Party set forth in this paragraph.

17. *Modification of Automatic Stay*. Except as provided in paragraph 16 herein, the automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit SPE to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit SPE to perform such acts as the Prepetition Secured Party may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit SPE to incur all liabilities and obligations to the Prepetition Secured Party under this Order; (d) authorize SPE to pay, and the Prepetition Secured Party to retain and apply, any payments made in accordance with the terms of this Order; and (e) permit the Prepetition Secured Party, subject to the terms of this Order, to exercise all rights and remedies provided for hereunder; provided that during the Default Notice Period, unless otherwise ordered by the Court, the automatic stay under section 362 of the Bankruptcy Code shall remain in effect.

18. *Limitation on Charging Expenses Against Collateral*. Except to the extent of the Carve Out and amounts set forth in the Budget which have accrued, but not yet been paid by SPE, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the Prepetition Secured Party, or any of

the Prepetition Bond Obligations, the Carve Out, or the Prepetition Bond Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition Secured Party, which consent is approved or unopposed by the Bondowner.  Subject to the Carve Out, nothing contained in this Order shall be deemed a consent by the Prepetition Secured Party to any charge, lien, assessment, or claim against the Prepetition Bond Collateral, or the Adequate Protection Liens, or otherwise, and no action, inaction or acquiescence by the Prepetition Secured Party shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Prepetition Secured Party, the Prepetition Bond Obligations, or the Prepetition Bond Collateral.

19.     *Section 552(b) of the Bankruptcy Code*.  The Prepetition Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Secured Party with respect to proceeds, product, offspring, or profits of any of the Prepetition Bond Collateral in the Chapter 11 Cases or any Successor Case.

20.     *Payments Free and Clear*.  Subject and subordinate to the Carve Out, any and all proceeds remitted to the Prepetition Secured Party pursuant to the terms of this Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 26 and 27 of this Order), received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

21.     *All Parties' Reservation of Rights*.  All parties reserve their rights to argue that, to the extent that any cash payment of interest, fees, and expenses as adequate protection to the Prepetition Secured Party is not allowed under section 506(b) of the Bankruptcy Code and not allowed on any other basis (including, without limitation, (i) on account of the Debtors' use of Prepetition Bond Collateral, and (ii) that there has been Bond Diminution in Value), such payments

should be recharacterized and applied as payments of principal owed under the applicable Prepetition Bond Document.

22.     *SPE's Reservation of Rights*.  Notwithstanding anything to the contrary in this Order, the entry of this Order and the grant of adequate protection to the Prepetition Secured Party pursuant to the terms hereof shall be without prejudice to the rights of SPE to, following the occurrence of the Termination Date, seek authority (at any time) to use Cash Collateral and the Prepetition Bond Collateral without the consent of the Prepetition Secured Party, and the Prepetition Secured Party reserves all of its respective rights with respect to contesting any such motion or request by the Debtors or any other person.

23.     *No Marshaling*.  The Prepetition Secured Party shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Bond Collateral, and proceeds of the Prepetition Bond Collateral shall be received and applied pursuant to this Order and the Prepetition Bond Documents notwithstanding any other agreement or provision to the contrary.  Subject to the Carve Out, without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Prepetition Bond Collateral after a Termination Event in the Chapter 11 Cases or any Successor Case.

24.     *Continuation of Prepetition Bond Liens*.  Subject to the rights set forth in paragraph 26, until the Prepetition Secured Party is Paid in Full, all liens and security interests of the Prepetition Secured Party (including, without limitation, the Adequate Protection Liens) shall remain valid and enforceable with the same continuing priority as described herein in the Chapter 11 Cases or any Successor Case.  The term "**Paid in Full**" or "**Payment in Full**" means except as otherwise agreed to by, the Prepetition Secured Party (including through entry of an order confirming a chapter 11 plan reasonably acceptable to the Prepetition Secured Party), all of the Prepetition Bond Obligations and Adequate Protection Obligations have been indefeasibly paid in full in cash and completely satisfied.

19

25. *Perfection of Bond Adequate Protection Liens*.

a. The Prepetition Secured Party is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments (collectively, "**Security Filings**") in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Bond Adequate Protection Liens ("**Validation Actions**"). Whether or not the Prepetition Secured Party shall, in its sole discretion, choose to file such Security Filings, or take any Validation Actions, the Bond Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Order), at the time and on the date of entry of this Order or thereafter. Upon the reasonable request of the Prepetition Secured Party, the Prepetition Secured Party and SPE, without any further consent of any party, are authorized to take, execute, deliver and file such Security Filings (in each case, without representation or warranty of any kind) to enable the Prepetition Secured Party to further validate, perfect, preserve and enforce the Bond Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

b. A certified copy of this Final Order (or the notice of the filing hereof) may, in the discretion of the Prepetition Secured Party, be filed with or recorded in filing or recording offices in addition to or *in lieu* of such Security Filings, and all filing offices are hereby authorized to accept such certified copy of this Order or notice for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be, and hereby is deemed, modified to the extent necessary to permit the Prepetition Secured Party to take all actions, as applicable, referenced in this paragraph 31(a) and 31(b).

26. *Effect of Stipulations on Third Parties*. Each of SPE's Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Order, including, without limitation, in paragraph 4, shall be binding upon the Debtors, as applicable, and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including a Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors (a "**Chapter 7/11 Trustee**"), in all circumstances and for all purposes unless: (a) any party in interest (including any Chapter 7/11 Trustee) files a motion seeking standing (with a complaint attached thereto) to pursue

20

an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein, including without limitation, in paragraph 27), challenging the validity, enforceability, priority, or extent of the Prepetition Bond Obligations, the liens on the Prepetition Bond Collateral securing the Prepetition Bond Obligations, or otherwise asserting or prosecuting any estate claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against the Prepetition Secured Party, the Bondowner, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Bond Obligations, the Prepetition Bond Collateral, by no later than the date that is the earlier of (i) the date that is seventy-five (75) days after the date of entry of the [Interim] Order (the "**Challenge Deadline**"), (ii) the effective date of a confirmed chapter 11 plan, or (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the deadline to commence a challenge (such time period, the "**Challenge Period**"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such motion seeking standing to pursue an adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Bond Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case; (y) the Prepetition Secured Party's liens on the Prepetition Bond Collateral, including Cash Collateral, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 4(d), not subject to defense, counterclaim, recharacterization, subordination or avoidance in the Chapter 11 Cases or any Successor Case; and (z) the Prepetition Bond Obligations, the Prepetition Secured Party's liens on the Prepetition Bond Collateral, and the Prepetition Secured Party (and their respective agents, affiliates, subsidiaries, directors, officers,

representatives, attorneys, or advisors) shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from seeking to exercise the rights of SPE's estate, including without limitation, any successor thereto (including, without limitation, any estate representative or a Chapter 7/11 Trustee, whether such Chapter 7/11 Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any motion seeking standing (with a complaint attached thereto) to pursue such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Order, including without limitation, in paragraph 4 of this Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any person, including any Chapter 7/11 Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any person, including a Chapter 7/11 Trustee, standing or authority to pursue any cause of action belonging to SPE or its estate.  In the event that there is a timely successful challenge brought pursuant to this paragraph 26, the Court shall retain jurisdiction to fashion an appropriate remedy.

27.    *Limitation on Use of Collateral*.    Subject to the Carve Out, notwithstanding anything herein or in any other order by this Court to the contrary, no Cash Collateral, Prepetition Bond Collateral, proceeds, products, or offspring of any of the foregoing or any portion of the Carve Out may be used to pay any claims or expenses for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee (including any Creditors' Committee), any Chapter 7/11 Trustee, or any other person, party, or entity to: (a) apply to the Court for authority to approve superpriority claims or grant liens or security interests in the Prepetition Bond Collateral and Cash Collateral, or any portion thereof that are senior to, or on parity with, the Prepetition Bond Liens, unless the Prepetition Bond Obligations, and claims granted to the Prepetition Secured Party under this Order, as applicable, have been Paid in Full or otherwise agreed to in writing by the Prepetition Secured Party; (b) prevent, hinder or otherwise delay the Prepetition Secured Party's assertion, enforcement or realization on the Prepetition Bond

Collateral, including Cash Collateral, and liens, claims and rights granted to the Prepetition Secured Party under this Order, in accordance with the Prepetition Bond Documents or this Order; (c) seek to modify any of the rights and remedies granted to the Prepetition Secured Party under this Order or the Prepetition Bond Documents; (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are provided for in the Budget and approved by an order of this Court that is in form and substance reasonably satisfactory to the Prepetition Secured Party; (f) subject to paragraph 26, investigate, assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against the Prepetition Secured Party or its respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code, (ii) any action relating to any act, omission, or aspect of the relationship between the Prepetition Secured Party, on the one hand, and the Debtors or any of their affiliates, on the other, (iii) any action with respect to the validity and extent of the Prepetition Bond Obligations, or the validity, extent, and priority of the Prepetition Bond Liens or the Adequate Protection Liens,  (iv) except to contest the occurrence of a Termination Event as permitted in paragraph 15, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Prepetition Secured Party in respect of their liens and security interests in the Cash Collateral or the Prepetition Bond Collateral, (v) pay any fees or similar amounts to any person to purchase the Prepetition Secured Party's interests in any of SPE's assets without the prior written consent of the Prepetition Secured Party, unless such person consummates or otherwise closes the purchase of the Prepetition Secured Party's interests in any of SPE's assets, or (vi) use or seek to use Cash Collateral unless otherwise permitted hereby, without the prior written consent of the Prepetition Secured Party; or (g) for objecting to, contesting, delaying, preventing, hindering or otherwise interfering in any way with the exercise of rights or remedies by the Prepetition Secured Party with respect to any Prepetition Bond Collateral, including Cash

Collateral, after the occurrence of an Termination Event, except as otherwise permitted hereby; provided that, notwithstanding anything to the contrary in this paragraph, the Creditors' Committee may use Cash Collateral, solely to investigate, but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge (i) the claims and liens of the Prepetition Secured Party or (ii) potential claims, counterclaims, causes of action, or defenses, including the Claims and Defenses, against the Prepetition Secured Party; provided further that no more than an aggregate of $50,000 of the Cash Collateral, may be used by the Creditors' Committee with respect to the investigation set forth in the preceding proviso (the "**Investigation Budget**").

28.  *Release*.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph shall be deemed effective upon entry of this Order and subject only to the challenge rights set forth in paragraph 26 above.  The Debtors forever and irrevocably:  (a) release, discharge, and acquit the Prepetition Secured Party, the Bondowner, and their affiliates and each of their affiliates' respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, and predecessors in interest (each, a "**Prepetition Releasee**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type arising prior to the Petition Date, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Prepetition Secured Party and Bondowner on the one hand and the Debtors and their affiliates on the other including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Bond Obligations, the Prepetition Bond Liens, the Prepetition Bond Documents, the Debtors' attempts to restructure the Prepetition Bond Obligations, any and all claims and causes of action arising under title 11 of the United States Code or any other applicable law, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Party, in respect of events that occurred on or prior to the date hereof; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,

enforceability and non-avoidability of the Prepetition Bond Obligations, the Prepetition Bond Liens.  Nothing in this Final Order shall release any claims against a Prepetition Releasee that a court of competent jurisdiction determines, pursuant to a final, non-appealable order, results primarily from the actual fraud, gross negligence, or willful misconduct of such Prepetition Releasee.

29.      *Prohibition on Granting of Additional Liens and Interests, Use of Prepetition Bond Collateral*.  No liens, claims, interests or priority status, other than the Carve Out and the Permitted Encumbrances, having a lien or administrative priority superior to or *pari passu* with that of the Adequate Protection Superpriority Claim, the Prepetition Bond Liens, or the Adequate Protection Liens shall be granted while any portion of the Prepetition Bond Obligations remain outstanding, or any commitment under the Prepetition Bond Documents remains in effect, without the prior written consent of the Prepetition Secured Party.  Nothing in this Order shall authorize, other than in the ordinary course of SPE's business, the sale, transfer, lease, encumbrance, or other disposition of any assets that constitute Prepetition Bond Collateral of SPE or  its estate without the prior written consent of the Prepetition Secured Party (and no such consent or direction shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Party or any order of this Court), except as permitted in the Prepetition Bond Documents and this Order, and approved by the Court to the extent required under applicable bankruptcy law; provided that a Termination Event shall not be deemed to occur if SPE seeks approval of debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens, to the extent (i) such debtor in possession financing provides for Payment in Full of the Prepetition Bond Obligations, and Adequate Protection Obligations or (ii) the Prepetition Secured Party provides prior written consent for financing that does not provide for Payment in Full of the Prepetition Bond Obligations and Adequate Protection Obligations.

30.      *Binding Effect of Final Order*.  Subject to paragraph 26, immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), regardless of whether specifically articulated in each term and provision of this Order, the terms and provisions of this

Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Debtors, the Prepetition Secured Party, all other creditors of the Debtors, any Creditors' Committee, and each of their respective successors and assigns (including, without limitation, any Chapter 7/11 Trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code) and shall inure to the benefit of the Debtors, the Prepetition Secured Party, and its respective successors and assigns.

31. *Survival*.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any chapter 11 plan in any of these Chapter 11 Cases; (b) converting any of these cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of these cases or any Successor Case; or (d) pursuant to which this Court abstains from hearing any of the cases or any Successor Case.  Notwithstanding the entry of any such order, the terms and provisions of this Order, including the claims, liens, security interests and other protections granted to the Prepetition Secured Party pursuant to this Order, shall continue in these cases, in any Successor Case, or following dismissal of these cases or any Successor Case, and shall maintain their priority as provided by this Order and not be modified, altered or impaired in any way, whether by act or omission, until all of the Prepetition Bond Obligations and Adequate Protection Obligations have been Paid in Full, notwithstanding the occurrence of a Termination Event or any earlier termination of SPE's authorization to use the Prepetition Bond Collateral, including Cash Collateral.

32. *Limitation of Liability*.  The Prepetition Secured Party in determining to permit the use of Cash Collateral, making and administering the financial accommodations extended under the Prepetition Bond Documents, extending other financial accommodations to SPE under this Order and the Prepetition Bond Documents, or in exercising any rights or remedies as and when permitted pursuant to this Order or the Prepetition Bond Documents, as applicable, shall not (a) be deemed to be in "control" of the operations of the Debtors or any of their affiliates; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (c) be deemed

to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors or any of their affiliates (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or state statute). Furthermore, nothing in this Order or the Prepetition Bond Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Party, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

33.    *No Waiver*.  Other than as provided in this Order, nothing in this Order shall be construed in any way as a waiver or relinquishment of any rights that the Debtors or the Prepetition Secured Party may have to bring or be heard on any matter brought before this Court.

34.    *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable, *nunc pro tunc* to the Petition Date, immediately upon entry hereof.  Notwithstanding any Bankruptcy Rule, any Bankruptcy Local Rule, any Federal Rule of Civil Procedure, or other applicable law, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

35.    *Proofs of Claim*.  Neither the Prepetition Secured Party or the Bondowner shall be required to file proofs of claim in any of the Debtors' Chapter 11 Cases or a Successor Case for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Party and the Bondowner upon approval of this Order, and the Prepetition Secured Party and the Bondowner shall be treated under section 502(a) of the Bankruptcy Code as if they filed a proof of claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Debtors' Chapter 11 Cases or a Successor Case to the contrary, the Prepetition Secured Party and Bondowner are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they

see fit) a master proof of claim and/or aggregate proofs of claim in SPE's Chapter 11 Case or a Successor Case for any claim allowed herein.

36.     *No Third Party Rights*.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any party, creditor, equity holder, other entity or any direct, indirect or incidental beneficiary other than (a) the Prepetition Secured Party and its Representatives, (b) the Debtors, and (c) the respective successors and assigns of each of the foregoing.

37.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

38.     *Rights Reserved.*  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (a) the Prepetition Secured Party's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Prepetition Bond Documents or any other applicable agreement or law, or seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different or additional adequate protection, as applicable, or the Debtors' or any other party in interest's rights to oppose such relief, or (b) any of the rights and remedies of SPE, the Prepetition Secured Party, or any other party in interest under the Prepetition Bond Documents or other applicable agreement, the Bankruptcy Code or applicable nonbankruptcy law.

39.     *Creditors' Committee Rights Reserved*.  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (a) the Creditors' Committee's rights to pursue any and all rights and remedies under the Bankruptcy Code or any other applicable law, or seek any other or supplemental relief in respect of the Debtors or any other party in interest's rights to oppose such relief, or (b) any of the rights and remedies of the Debtors, the Creditors' Committee, or any other party in interest under the Bankruptcy Code or applicable nonbankruptcy law.

40.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

41.    *Necessary Action*.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

42.    *Retention of Jurisdiction*.    The Court shall retain jurisdiction to enforce the provisions of this Order, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order, including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

43.    *Interpretation*.    To the extent of any inconsistency between the Motion, the terms of any Interim Order, and the terms of this Order, the terms of this Order shall control.

**IT IS SO ORDERED.**

Prepared and submitted by:

SCHWARTZ LAW, PLLC

By: */s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

*Proposed Attorneys for the Debtors*

**Exhibit A**

**Budget**

# CONSOLIDATED

| Date | 9/30/2022 | 10/31/2022 | 11/30/2022 | 12/31/2022 | 1/31/2023 | 2/28/2023 | 3/31/2023 | 4/30/2023 | 5/31/2023 | 6/30/2023 | 7/31/2023 | 8/31/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|  | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Net Sales** | 322,504 | 282,383 | 289,901 | 284,591 | 223,942 | 214,649 | 211,000 | 224,739 | 234,852 | 250,118 | 337,281 | 342,720 |
| *% increase* | | -12.4% | 2.7% | -1.8% | -21.3% | -4.2% | -1.7% | 6.5% | 4.5% | 6.5% | 34.8% | 1.6% |
| **Weekly Cash Flow** | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | |
| Water delivery AR | 1,016,627 | 381,629 | 334,785 | 365,508 | 340,355 | 276,345 | 283,003 | 263,403 | 277,142 | 310,460 | 302,521 | 389,684 |
| **Total Receipts** | 1,016,627 | 381,629 | 334,785 | 365,508 | 340,355 | 276,345 | 283,003 | 263,403 | 277,142 | 310,460 | 302,521 | 389,684 |
| *Cumulative Receipts* | 1,016,627 | 1,398,256 | 1,733,041 | 2,098,549 | 2,438,904 | 2,715,250 | 2,998,253 | 3,261,656 | 3,538,798 | 3,849,257 | 4,151,778 | 4,541,462 |
| **Water Delivery Expenses - To be Paid by Industries** | | | | | | | | | | | | |
| Cost of Water (per COH rates) | 322,504 | 282,383 | 289,901 | 284,591 | 223,942 | 214,649 | 211,000 | 224,739 | 234,852 | 250,118 | 337,281 | 342,720 |
| Electric Bills | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| **Water Delivery Expenses - To be Paid by Industries** | 332,504 | 292,383 | 299,901 | 294,591 | 233,942 | 224,649 | 221,000 | 234,739 | 244,852 | 260,118 | 347,281 | 352,720 |
| **Operating Expenses** | | | | | | | | | | | | |
| Direct Employee Expenses (Payroll / Benefits) | 55,935 | 55,935 | 55,935 | 83,903 | 55,935 | 55,935 | 55,935 | 55,935 | 55,935 | 83,903 | 55,935 | 55,935 |
| Allocated Employee Expenses (Payroll / Benefits) | 70,756 | 70,756 | 70,756 | 106,133 | 70,756 | 70,756 | 70,756 | 70,756 | 70,756 | 106,133 | 70,756 | 70,756 |
| Other BMI Allocated Expenses | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 | 13,033 |
| Repairs / Maintinence | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 | 20,083 |
| Rent + CAM | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 | 10,984 |
| Security | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Property Taxes - Water | 4,557 | 22,406 | 0 | 0 | 11,203 | 0 | 11,203 | 0 | 0 | 0 | 0 | 0 |
| Personal Property Taxes | 0 | 0 | 0 | 4,557 | 0 | 0 | 4,557 | 0 | 0 | 4,557 | 0 | 0 |
| Insurance | 37,413 | 0 | 0 | 37,413 | 0 | 0 | 37,413 | 0 | 0 | 37,413 | 0 | 0 |
| Office Supplies | 85 | 85 | 85 | 85 | 85 | 85 | 85 | 85 | 85 | 85 | 85 | 85 |
| Communications | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 | 1,058 |
| Dues and Subscriptions | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 |
| Postage Expense | 136 | 136 | 136 | 136 | 136 | 136 | 136 | 136 | 136 | 136 | 136 | 136 |
| **Total Operating Expenses** | 183,313 | 163,748 | 141,342 | 218,691 | 152,545 | 141,342 | 194,516 | 141,342 | 141,342 | 218,691 | 141,342 | 141,342 |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Bank Charges | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Restructuring Disbursements** | | | | | | | | | | | | |
| Debtor's Counsel | 150,000 | 125,000 | 100,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 75,000 | 100,000 | 100,000 |
| Debtor's Financial Advisors | 150,000 | 125,000 | 100,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 75,000 | 100,000 | 100,000 |
| Lender's Counsel | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Noticing Agent Fees | 30,000 | 30,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 15,000 | 20,000 | 30,000 | 30,000 |
| US Trustee Fee | 0 | 3,684 | 0 | 0 | 14,444 | 0 | 0 | 10,960 | 0 | 0 | 11,573 | 0 |
| **Total Restructuring Disbursements** | 405,000 | 358,684 | 260,000 | 210,000 | 224,444 | 160,000 | 160,000 | 170,960 | 165,000 | 220,000 | 291,573 | 280,000 |

# BWC

| Date | 9/30/2022 | 10/31/2022 | 11/30/2022 | 12/31/2022 | 1/31/2023 | 2/28/2023 | 3/31/2023 | 4/30/2023 | 5/31/2023 | 6/30/2023 | 7/31/2023 | 8/31/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Net Sales** | 322,504 | 282,383 | 289,901 | 284,591 | 223,942 | 214,649 | 211,000 | 224,739 | 234,852 | 250,118 | 337,281 | 342,720 |
| *% Increase* | | -12.4% | 2.7% | -1.8% | -21.3% | -4.2% | -1.7% | 6.5% | 4.5% | 6.5% | 34.8% | 1.6% |
| **Weekly Cash Flow** | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | |
| Water delivery AR | 797,006 | 381,629 | 334,785 | 365,508 | 340,355 | 276,345 | 283,003 | 263,403 | 277,142 | 310,460 | 302,521 | 389,684 |
| **Total Receipts** | 797,006 | 381,629 | 334,785 | 365,508 | 340,355 | 276,345 | 283,003 | 263,403 | 277,142 | 310,460 | 302,521 | 389,684 |
| *Cumulative Receipts* | 797,006 | 1,178,634 | 1,513,420 | 1,878,928 | 2,219,283 | 2,495,628 | 2,778,632 | 3,042,035 | 3,319,176 | 3,629,636 | 3,932,157 | 4,321,841 |
| **Water Delivery Expenses - To be Paid by Industries** | | | | | | | | | | | | |
| Cost of Water (per COH rates) | 322,504 | 282,383 | 289,901 | 284,591 | 223,942 | 214,649 | 211,000 | 224,739 | 234,852 | 250,118 | 337,281 | 342,720 |
| Electric Bills | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| **Water Delivery Expenses - To be Paid by Industries** | 332,504 | 292,383 | 299,901 | 294,591 | 233,942 | 224,649 | 221,000 | 234,739 | 244,852 | 260,118 | 347,281 | 352,720 |
| **Operating Expenses** | | | | | | | | | | | | |
| Direct Employee Expenses (Payroll / Benefits) | 16,781 | 16,781 | 16,781 | 25,171 | 16,781 | 16,781 | 16,781 | 16,781 | 16,781 | 25,171 | 16,781 | 16,781 |
| Allocated Employee Expenses (Payroll / Benefits) | 21,227 | 21,227 | 21,227 | 31,840 | 21,227 | 21,227 | 21,227 | 21,227 | 21,227 | 31,840 | 21,227 | 21,227 |
| Other BMI Allocated Expenses | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 | 3,910 |
| Repairs / Maintenence | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 | 6,025 |
| Rent + CAM | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 | 3,295 |
| Security | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Property Taxes - Water | 0 | 6,722 | 0 | 0 | 3,361 | 0 | 3,361 | 0 | 0 | 0 | 0 | 0 |
| Personal Property Taxes | 1,367 | 0 | 0 | 1,367 | 0 | 0 | 1,367 | 0 | 0 | 1,367 | 0 | 0 |
| Insurance | 11,224 | 0 | 0 | 11,224 | 0 | 0 | 11,224 | 0 | 0 | 11,224 | 0 | 0 |
| Office Supplies | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 |
| Communications | 317 | 317 | 317 | 317 | 317 | 317 | 317 | 317 | 317 | 317 | 317 | 317 |
| Dues and Subscriptions | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 62 |
| Postage Expense | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 |
| **Total Operating Expenses** | 54,994 | 49,125 | 42,403 | 65,607 | 45,764 | 42,403 | 58,355 | 42,403 | 42,403 | 65,607 | 42,403 | 42,403 |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Bank Charges | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Restructuring Disbursements** | | | | | | | | | | | | |
| Debtor's Counsel | 75,000 | 62,500 | 50,000 | 37,500 | 37,500 | 25,000 | 25,000 | 25,000 | 25,000 | 37,500 | 50,000 | 50,000 |
| Debtor's Financial Advisors | 75,000 | 62,500 | 50,000 | 37,500 | 37,500 | 25,000 | 25,000 | 25,000 | 25,000 | 37,500 | 50,000 | 50,000 |
| Lender's Counsel | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Noticing Agent Fees | 15,000 | 15,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 7,500 | 10,000 | 15,000 | 15,000 |
| US Trustee Fee | 0 | 2,210 | 0 | 0 | 10,970 | 0 | 0 | 8,217 | 0 | 0 | 8,767 | 0 |
| **Total Restructuring Disbursements** | 165,000 | 142,210 | 105,000 | 80,000 | 90,970 | 55,000 | 55,000 | 63,217 | 57,500 | 85,000 | 123,767 | 115,000 |

# SPE

| Date | 9/30/2022 | 10/31/2022 | 11/30/2022 | 12/31/2022 | 1/31/2023 | 2/28/2023 | 3/31/2023 | 4/30/2023 | 5/31/2023 | 6/30/2023 | 7/31/2023 | 8/31/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Net Sales** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| *% increase* | | | | | | | | | | | | |
| **Weekly Cash Flow** | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | |
| Water delivery AR | 219,621 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Receipts** | **219,621** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |
| *Cumulative Receipts* | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 | 219,621 |
| **Water Delivery Expenses – To be Paid by Industries** | | | | | | | | | | | | |
| Cost of Water (per COH rates) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Electric Bills | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Water Delivery Expenses – To be Paid by Industries** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |
| **Operating Expenses** | | | | | | | | | | | | |
| Direct Employee Expenses (Payroll / Benefits) | 39,155 | 39,155 | 39,155 | 58,732 | 39,155 | 39,155 | 39,155 | 39,155 | 39,155 | 58,732 | 39,155 | 39,155 |
| Allocated Employee Expenses (Payroll / Benefits) | 49,529 | 49,529 | 49,529 | 74,293 | 49,529 | 49,529 | 49,529 | 49,529 | 49,529 | 74,293 | 49,529 | 49,529 |
| Other BMI Allocated Expenses | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 | 9,123 |
| Repairs / Maintinence | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 |
| Rent + CAM | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 | 7,689 |
| Security | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 |
| Property Taxes - Water | 0 | 15,684 | 0 | 0 | 7,842 | 0 | 7,842 | 0 | 0 | 0 | 0 | 0 |
| Personal Property Taxes | 3,190 | 0 | 0 | 3,190 | 0 | 0 | 3,190 | 0 | 0 | 3,190 | 0 | 0 |
| Insurance | 26,189 | 0 | 0 | 26,189 | 0 | 0 | 26,189 | 0 | 0 | 26,189 | 0 | 0 |
| Office Supplies | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| Communications | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 |
| Dues and Subscriptions | 145 | 145 | 145 | 145 | 145 | 145 | 145 | 145 | 145 | 145 | 145 | 145 |
| Postage Expense | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 |
| **Total Operating Expenses** | **128,319** | **114,624** | **98,940** | **153,083** | **106,782** | **98,940** | **136,161** | **98,940** | **98,940** | **153,083** | **98,940** | **98,940** |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Bank Charges | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| **Restructuring Disbursements** | | | | | | | | | | | | |
| Debtor's Counsel | 75,000 | 62,500 | 50,000 | 37,500 | 37,500 | 25,000 | 25,000 | 25,000 | 25,000 | 37,500 | 50,000 | 50,000 |
| Debtor's Financial Advisors | 75,000 | 62,500 | 50,000 | 37,500 | 37,500 | 25,000 | 25,000 | 25,000 | 25,000 | 37,500 | 50,000 | 50,000 |
| Lender's Counsel | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Noticing Agent Fees | 15,000 | 15,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 7,500 | 10,000 | 15,000 | 15,000 |
| US Trustee Fee | 0 | 1,474 | 0 | 0 | 3,474 | 0 | 0 | 2,743 | 0 | 0 | 2,806 | 0 |
| **Total Restructuring Disbursements** | **240,000** | **216,474** | **155,000** | **130,000** | **133,474** | **105,000** | **105,000** | **107,743** | **107,500** | **135,000** | **167,806** | **165,000** |

## **Exhibit B**

### **Form Request for Draw**

Request No._____

To:

Bank of Nevada, a division of Western Alliance Bank,
an Arizona corporation, as Trustee under that
certain Indenture of Trust dated as of  February 23, 2017
2890 N. Green Valley Parkway
Henderson, Nevada 89014

[WITH A COPY TO BONDOWNER]

      The undersigned Authorized Representative of the Basic Water Company SPE I, LLC, a debtor and debtor-in- possession (the "**Debtor**") in the chapter 11 cases pending before the United States Bankruptcy Court for the District of Nevada, Case No. [●] (the "**Chapter 11 Cases**"), hereby requests that the following amounts be transferred from the [SPE BON (6972)/Revenue Fund - BON (6124)] to the following payees pursuant to the *[Interim] Order (I) Authorizing Debtors Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection to the Prepetition Secured Party; and (III) Granting Related Relief* [Docket No. [●]] (the "**Cash Collateral Order**") :

| Payee | Amount | Description | Wiring Instructions |
|---|---|---|---|
|  |  |  |  |

The undersigned Authorized Representative of the Debtor hereby states and certifies that:

      (i)    The withdrawal request is valid and consistent with the approved Budget under the Cash Collateral Order and no part thereof has been included in any other Request For Draw previously submitted to the Trustee under the provisions of the Cash Collateral Order; and

      (ii)    no Termination Events currently exists (or with the passage of time, will exist) under the Cash Collateral Order.

31

Dated:

                                       BASIC WATER COMPANY SPE 1, LLC

                                       By: Basic Water Company
                                       Its: Managing Member

                                       By:_____
                                       Name: _____
                                       Its: _____

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of this order.

By: */s/ Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Gabrielle A. Hamm, Esq.
601 East Bridger Avenue
Las Vegas, NV 89101

*Proposed Attorneys for the Debtors*

###

33